# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| DOUGLAS C. NELSON and KARINA NELSON, husband and wife; LANDMARK, LLC, a Washington limited liability company, | No.  49640-2-II |
| Respondents/Cross Appellants, | |
| v. | |
| ANTONE PRYOR, individually, and the marital community composed of ANTONE PRYOR and KIM YOUNG OAK, husband and wife, | |
| Appellants/Cross Respondents, | |
| and | |
| GREEN ROCK HOLDINGS, LLC, a Washington limited liability company, and SPORTSMAN PARK, LLC, a Washington limited liability company, | UNPUBLISHED OPINION |
| Respondents/Cross Appellants. | |

WORSWICK, J. — Douglas C. Nelson and Antone Pryor were real estate development

business partners for several companies.  One of their companies, Landmark LLC, was subject to

litigation and ordered to pay a judgment.  Pryor agreed to pay one-half of Landmark's litigation

costs.  Nelson and Pryor rearranged their personal debts, and their companies' debts, to avoid

paying this judgment but were unsuccessful.  Pryor ultimately failed to pay his share of the

judgment. Nelson, Karina Nelson, and Landmark (collectively "the Nelsons")[1] filed a lawsuit against Pryor, alleging multiple claims of breach of contract. Pryor counterclaimed for, among other things, breach of fiduciary duties, fraud, breach of contract, and indemnification.

Following a bench trial, the trial court concluded that the Nelsons proved two of their breach of contract claims and that Pryor failed to prove his claims for breach of fiduciary duties, fraud, breach of contract, and indemnification. The trial court also ordered that Pryor pay a judgment, attorney fees, and prejudgment interest.

Pryor appeals, challenging a number of the trial court's findings of fact and conclusions of law, as well as the court's award of attorney fees and prejudgment interest. The Nelsons cross appeal, arguing that the trial court erred in concluding that they failed to prove one of their breach of contract claims. We affirm the trial court.

FACTS

I. BACKGROUND

Nelson formed Landmark, a real estate development company, in 1999.[2] Soon after, Pryor purchased a 50 percent ownership interest in Landmark, executing a promissory note to Landmark for his ownership interest. The promissory note provided that Landmark would give Pryor a minimum of seven days' notice in demanding payment on the promissory note. Nelson and Pryor then proceeded to form a number of development companies together, including

---

[1] We refer to Douglas Nelson, Karina Nelson, and Landmark collectively as "the Nelsons" for clarity. We refer to "Nelson" singularly when referencing Douglas Nelson.

[2] Landmark was previously known as Retirement Ventures LLC. For clarity, we refer only to Landmark.

Sportsman Park LLC, Central Plaza LLC, and Green Rock Holdings LLC. Nelson was the managing member of each company.

Landmark sought to purchase two parcels of land from the Sakai QTIP Trust (Sakai) to build a retirement community. Landmark and Sakai engaged in a number of negotiations regarding the purchase and sale of the property, but their negotiations were ultimately unsuccessful. In 2004, Landmark filed a lawsuit against Sakai for, among other things, breach of contract. Sakai counterclaimed, and the lawsuit proceeded to trial (the first *Sakai* lawsuit).

In 2006, while the first *Sakai* lawsuit was ongoing, Pryor became interested in selling his ownership interest in Landmark. Landmark and Pryor entered into a "Redemption Agreement" to facilitate the sale. Clerk's Papers (CP) at 429. Under the Redemption Agreement, Landmark and Pryor agreed that Pryor would contribute his interest in Landmark to his and Nelson's holding company, Green Rock Holdings. Then, Green Rock Holdings would pay Pryor for his ownership interest. The Redemption Agreement provided that "[w]ith regard to the [*Sakai* litigation] . . . Pryor agrees to reimburse Landmark for one-half of all costs and expenses, including, without limitation, attorneys fees and costs, damages, judgments and amounts paid in settlement, incurred by Landmark . . . in prosecution or defense of the [litigation]." CP at 24. The Redemption Agreement also contained an attorney fee provision: "If any party needs to engage an attorney to enforce the terms of this Agreement . . . the prevailing party shall, in addition to any other relief, be entitled to recover from the party in default reasonable attorneys' fees and costs, including any on appeal." CP at 26.

In 2008, Green Rock Holdings still owed Pryor $412,000 under the Redemption Agreement. Sportsman Park, one of Nelson and Pryor's real estate developments, owed Landmark $746,330.66. Nelson and Pryor agreed to restructure this debt and executed an agreement that the parties refer to as the "Debt Swap." CP at 431. As part of the Debt Swap, Nelson and Pryor agreed that Pryor would forgive the balance owed to him by Green Rock Holdings. In exchange, Landmark would forgive the balance Sportsman Park owed it so as to avoid either Nelson or Pryor having to make additional capital contributions to Sportsman Park.

The first *Sakai* lawsuit concluded, and Landmark was ultimately ordered to pay damages. Soon after, Nelson formed Apex Construction LLC and transferred Landmark's remaining assets to Apex Construction (the "Apex Fraud"). As a result, Landmark became insolvent and failed to pay the judgment ordered in the first *Sakai* lawsuit. Then, Sakai filed a second lawsuit against Nelson, Pryor, and Landmark (the second *Sakai* lawsuit). In the second *Sakai* lawsuit, Sakai sought to pierce the corporate veil of Landmark, alleging that Landmark fraudulently transferred its assets to Sportsman Park during the Debt Swap to avoid paying the judgment in the first *Sakai* lawsuit.

In 2012, during the second *Sakai* lawsuit, Pryor sought to sell his 50 percent ownership interest in Sportsman Park. Nelson and Pryor subsequently executed the "Purchase Agreement," in which Nelson agreed to purchase Pryor's ownership interest in the companies. CP at 445. Paragraph 7 of the Purchase Agreement provided:

**7. Sakai Lawsuit**

a. [Pryor] and [Nelson] are subject to a lawsuit involving [Sakai]. They have retained Bruce Johnston to represent them in that action. The Court has previously entered judgment against Landmark, LLC in favor of the Sakai

4

> Parties in the principal amount of $77,702.70 . . . . In the New Suit the Sakai Parties are alleging that [Pryor] and [Nelson] engaged in fraudulent conveyances and are seeking to "pierce the corporate veil" of Landmark to hold [Pryor] and [Nelson] personally liable for the Landmark Judgment.

> b. The terms of this Agreement notwithstanding, [Pryor] and [Nelson] agree that they will continue to share equally in the cost of that litigation, including all attorneys' fees and costs, when and as they become due. If the Court in the New Suit holds [Pryor] and [Nelson] personally liable for the Landmark Judgment, then [Pryor's] total liability for the final judgment and accrued interest (but not for attorneys' fees and costs) in the New Suit, after expiration of all appeals, will not exceed $200,000.00. [Nelson] will be responsible for any judgment and accrued interest amount (excluding attorneys' fees and costs) in the New [Suit] that exceeds $400,000.00 after expiration of all appeals.

CP at 47.

The Purchase Agreement also contained an integration provision that stated, "[t]his Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement. There are no other commitments or agreements between the parties with respect to such matters." CP at 50. Additionally, the Purchase Agreement included a release provision. The release provision stated that by signing the Purchase Agreement, Pryor released any and all claims against Nelson, Sportsman Park, and Central Plaza that related to Pryor's ownership interest in his and Nelson's companies.

The trial court consolidated the first *Sakai* lawsuit and the second *Sakai* lawsuit (the *Sakai* litigation). Several months later, Landmark and Sakai engaged in mediation and entered into a settlement agreement for the *Sakai* litigation. Landmark agreed to pay Sakai $70,000 in exchange for Sakai dismissing the litigation with prejudice. Landmark paid Sakai the $70,000 settlement, but Pryor did not pay any portion of the settlement payment. Landmark also incurred

an additional $141,998.12 in attorney fees and costs in defending the *Sakai* litigation. Pryor did not pay his one-half share of the attorney fees or costs.

## II. PRESENT CASE

In January 2014, the Nelsons filed a lawsuit against Pryor, alleging that Pryor breached the promissory note, Redemption Agreement, and Purchase Agreement. Pryor counterclaimed for, among other things, breach of fiduciary duties, fraud, breach of contract, and indemnification. Following trial, the trial court entered findings of fact and conclusions of law.

A.    *The Nelsons' Claims for Breach of Contract*

The trial court concluded that the Nelsons' claim that Pryor breached the promissory note failed because Landmark failed to properly demand payment in the manner required by the promissory note. The trial court also concluded that the Nelsons proved their claims that Pryor breached both the Redemption Agreement and the Purchase Agreement. The trial court determined that Pryor was obligated under both the Redemption Agreement and the Purchase Agreement to pay one-half of all costs incurred by Landmark in the *Sakai* litigation, but Pryor failed to do so. The trial court found that the costs Landmark incurred included $10,785.83 for mediation and the fees of two accountants in preparing for the *Sakai* litigation.

B.    *Pryor's Claim for Breach of Fiduciary Duties*

Pryor argued that Nelson breached a number of fiduciary duties in arranging the Debt Swap, including his duty of loyalty and care, duty to avoid self-dealing, and duty to avoid conflicts of interest. Pryor contended that Nelson had misrepresented material facts regarding the Debt Swap, but the trial court found that there was insufficient corroboration to support Pryor's contention. The trial court determined that the terms of the Debt Swap were

6

unambiguous and that Pryor was aware of the terms of the Debt Swap and agreed to it on his own accord. Thus, the trial court concluded that Pryor could not claim breach of fiduciary duties because he knowingly acquiesced to the Debt Swap and consented to the alleged breach.

The trial court also concluded that the business judgment rule barred Pryor's claim for breach of fiduciary duties. The trial court found that Nelson hired a number of employees and professionals to advise him on the proper handling of the Debt Swap. The trial court concluded that Nelson relied in good faith on the reports and opinions of the employees and professionals when he executed the Debt Swap and that, as a result, Nelson could not be liable for his mistake in judgment.

C.    *Pryor's Claim for Fraud*

Pryor asserted that the Nelsons fraudulently represented that Nelson would contribute $373,165.22 of his own funds to Landmark during the Debt Swap. Despite Pryor's testimony to this effect, the trial court determined that there was insufficient documentation to corroborate Pryor's testimony. Ultimately, the trial court concluded that Pryor failed to prove his fraud claim against the Nelsons because it was unclear whether the Nelsons fraudulently misrepresented an existing fact.

D.    *Pryor's Claim for Breach of Contract*

Pryor also asserted that Green Rock Holdings breached the Redemption Agreement by failing to pay Pryor for his ownership interest in Landmark. The trial court found that, under the Redemption Agreement signed in 2006, Landmark and Pryor agreed that Green Rock Holdings would pay Pryor for his ownership interest in Landmark. In 2008, Nelson and Pryor executed the Debt Swap to restructure their debts. As part of the Debt Swap, Pryor agreed to forgive the

7

balance Green Rock Holdings owed him in exchange for Landmark forgiving the balance Sportsman Park owed it. As a result, the trial court concluded that Green Rock Holdings had no duty to continue paying Pryor and that Pryor failed to establish that Green Rock Holdings breached the Redemption Agreement.

E.     *Pryor's Claim for Indemnification*

Pryor also claimed that he had contractual rights to indemnification under both the Redemption Agreement and the Purchase Agreement. The trial court concluded that Pryor failed to make a sufficient showing for indemnification because he did not identify a contract with an indemnity provision that required payment from the Nelsons.

F.     *Attorney Fees and Judgment*

The trial court entered separate findings of fact and conclusions of law regarding attorney fees. The trial court found that the Nelsons were entitled to attorney fees under the Redemption Agreement. The trial court awarded the Nelsons $104,399.86 in attorney fees and costs, concluding that no reasonable segregation could be made between the breach of contract claims and the other claims pleaded.

The trial court ordered that Pryor pay prejudgment interest to the Nelsons in the amount of $32,346.47 and that Pryor pay a postjudgment interest rate of 12 percent. Pryor appeals, and the Nelsons cross appeal.

## ANALYSIS

### I. LEGAL PRINCIPLES

We review a trial court's decision following a bench trial to determine whether its findings of fact are supported by substantial evidence and, in turn, whether those findings

support its conclusions of law. *Endicott v. Saul*, 142 Wn. App. 899, 909, 176 P.3d 560 (2008).

We treat unchallenged findings of fact as verities on appeal,[3] and we review questions of law de

novo. 142 Wn. App. at 909.

The party challenging a finding of fact bears the burden of showing that the record does

not support the trial court's finding. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*,

176 Wn. App. 335, 342, 308 P.3d 791 (2013). Substantial evidence is the quantum of evidence

sufficient to persuade a fair-minded person of its truth. *Endicott*, 142 Wn. App. at 909. In

determining the sufficiency of the evidence, we consider only the evidence favorable to the

prevailing party. 142 Wn. App. at 909. "[C]redibility determinations are solely for the trier of

fact. Credibility determinations cannot be reviewed on appeal." *Morse v. Antonellis*, 149 Wn.2d

572, 574, 70 P.3d 125 (2003). We also defer to the trial court's evaluation of the persuasiveness

of the evidence. *Endicott*, 142 Wn. App. at 909.

---

[3] RAP 10.3(g) requires that an appellant make a separate assignment of error for each finding of fact that he or she contends was improperly made with references to the finding by number. However, we will waive technical violations of RAP 10.3(g) where the appellant's opening brief makes the nature of the challenge clear and includes the challenged findings in the text. *Harris v. Urell*, 133 Wn. App. 130, 137, 135 P.3d 530 (2006). Although Pryor fails to make a separate assignment of error for each finding of fact he challenges, we waive the technical violation of RAP 10.3(g) because Pryor references the challenged findings in the text of his opening brief and informs us of the nature of his challenges.

To the extent that Pryor fails to clearly challenge the trial court's findings in his opening brief, we decline to review them. Moreover, we decline to review Pryor's additional assignments of error in his reply brief. Issues raised for the first time in a reply brief are untimely and waived. RAP 10.3(c); *Ives v. Ramsden*, 142 Wn. App. 369, 396, 174 P.3d 1231 (2008).

In interpreting a contract, our primary objective is to discern the parties' intent. *Wm. Dickson Co. v. Pierce County*, 128 Wn. App. 488, 493, 116 P.3d 409 (2005). We consider the parties' intent a question of fact. 128 Wn. App. at 493.

## II. THE "APEX FRAUD"

As an initial matter, Pryor reframes many of his arguments within the context of the "Apex Fraud," claiming that the trial court determined that Nelson's transfer of Landmark's assets to Apex Construction was, in fact, fraudulent. Specifically, Pryor argues that the trial court's finding of fact 15, which states that "[i]t is likely [that Nelson's transfer of Landmark's funds to Apex Construction] was designed so that Landmark would not have the assets to pay the Sakai I judgment," establishes fraud on a more probable than not basis. CP at 428. Pryor's argument is unpersuasive.

"There are nine essential elements of fraud, all of which must be established by clear, cogent, and convincing evidence." *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 166, 273 P.3d 965 (2012). Clear, cogent, and convincing evidence requires that a fact in issue be "highly probable" and is a more stringent standard than whether it is more probable than not that a fact in issue is true. *Colonial Imports, Inc. v. Carlton Nw., Inc.*, 121 Wn.2d 726, 735, 853 P.2d 913 (1993). To sustain a fraud determination, the trial court must generally make separate findings of fact for each of the nine elements of fraud. *Pedersen v. Bibioff*, 64 Wn. App. 710, 723, 828 P.2d 1113 (1992).

The Apex Fraud was not a central issue at trial and was, at most, tangentially raised. While finding of fact 15 may amount to a finding that Nelson's transfer of Landmark's funds to Apex Construction was potentially fraudulent, the trial court's finding does not constitute a fraud

determination. The trial court's finding that the transfer was "likely" made to avoid paying the judgment in the *Sakai* litigation does not meet the stringent clear, cogent, and convincing burden of proof. Moreover, the trial court did not make a separate finding of fact concerning each of the nine elements of fraud. Accordingly, the trial court did not find that Nelson's transfer of Landmark's funds to Apex Construction constituted fraud. Pryor's argument fails.

III. PRYOR'S BREACH OF THE REDEMPTION AGREEMENT & THE PURCHASE AGREEMENT

Pryor challenges the trial court's findings of fact 96 and 104, as well as conclusions of law 2 and 3, in which the court determined that Pryor breached both the Redemption Agreement and the Purchase Agreement. Specifically, Pryor argues that the trial court's findings of fact 96 and 104 are not supported by substantial evidence and, as a result, the trial court's conclusions are erroneous. We disagree.

A. *Finding of Fact 96*

Pryor argues that finding of fact 96 is not supported by substantial evidence because it materially misquotes the Purchase Agreement.[4] We disagree.

---

[4] Finding of fact 96 states:

> Under the 2012 Purchase Agreement, Pryor restated his earlier agreement to remain liable for 50% of the Sakai Litigation. Paragraph 7 of the Purchase Agreement provides, in relevant part, as follows:

> 7. Sakai Lawsuit.
> Selling Member [Pryor] and Purchasing Member [Nelson] are subject to a lawsuit involving [Sakai]. The Court has previously entered judgment against Landmark, LLC in favor of the Sakai parties in the Principal amount of $77,702.70 . . . . In the New Suit the Sakai Parties are alleging that the Selling Member and the Purchasing Member engaged in fraudulent conveyances and are seeking to "pierce the

In 2012, Pryor and Nelson executed the Purchase Agreement. Paragraph 7 of the

Purchase Agreement provided:

**7. Sakai Lawsuit**

a.  [Pryor] and [Nelson] are subject to a lawsuit involving [Sakai]. They have retained Bruce Johnston to represent them in that action. The Court has previously entered judgment against Landmark, LLC in favor of the Sakai Parties in the principal amount of $77,702.70 . . . . In the New Suit the Sakai Parties are alleging that [Pryor] and [Nelson] engaged in fraudulent conveyances and are seeking to "pierce the corporate veil" of Landmark to hold [Pryor] and [Nelson] personally liable for the Landmark Judgment.

b.  The terms of this Agreement notwithstanding, [Pryor] and [Nelson] agree that they will continue to share equally in the cost of that litigation, including all attorneys' fees and costs, when and as they become due. If the Court in the New Suit holds [Pryor] and [Nelson] personally liable for the Landmark Judgment, then [Pryor's] total liability for the final judgment and accrued interest (but not for attorneys' fees and costs) in the New Suit, after expiration of all appeals, will not exceed $200,000.00. [Nelson] will be responsible for any judgment and accrued interest amount (excluding attorneys' fees and costs) in the New [Suit] that exceeds $400,000.00 after expiration of all appeals.

CP at 47.

Viewing the evidence in a light most favorable to the Nelsons, finding of fact 96 is

supported by substantial evidence. Finding of fact 96 purports only to restate the "relevant"

portions of the Purchase Agreement. While finding of fact 96 paraphrases paragraph 7 of the

Purchase Agreement, it does not misstate Pryor and Nelson's agreement in paragraph 7. As a

---

corporate veil" of Landmark to hold Selling Member and Purchasing Member personally liable for the Landmark Judgment.
a.  The terms of this Agreement notwithstanding, Selling Member and Purchasing Member agree that they will continue to share equally in the cost of that litigation, including all attorneys' fees and costs, when and as they become due.

CP at 446 (some alterations in original).

result, Pryor fails to show that the record does not support the trial court's finding. Accordingly, finding of fact 96 is supported by substantial evidence.

B.    *Finding of Fact 104*

Pryor challenges finding of fact 104, which restates the fees that Landmark incurred during the *Sakai* litigation. Pryor argues that finding of fact 104 is not supported by substantial evidence because (1) Pryor paid his share of the mediation costs in the *Sakai* litigation, (2) the Nelsons failed to authenticate accountant Jim Davidson's invoice at trial, and (3) Landmark did not hire accountant Jason Newman to defend the *Sakai* litigation. We address Pryor's arguments in turn and conclude that finding of fact 104 is supported by substantial evidence.

1. Mediation Fees

First, Pryor argues that substantial evidence does not support finding of fact 104, which states that Pryor owes $666.67 for his share of the mediation fee during the *Sakai* litigation, because Pryor had already paid his share of the fee. The Purchase Agreement provided that Pryor must pay one-half of all costs Landmark incurred in defending the *Sakai* litigation. Landmark was charged $1,333.33 for one-third of the mediation fee during the second *Sakai* lawsuit. Pryor was also personally charged $1,333.33 for one-third of the mediation fee because he was a third-party plaintiff. Although Pryor paid one-third of the mediation fee for his personal involvement in the *Sakai* litigation, Pryor was also obligated by the Purchase Agreement to pay one-half of all costs Landmark incurred in the litigation. As a result, substantial evidence supports the trial court's finding that Pryor owes one-half of the $1,333.33 mediation fee.

13

2. Fee to Davidson

Next, Pryor argues that substantial evidence does not support finding of fact 104, which provides that Landmark paid $5,000.50 to Davidson for his services in preparing for the *Sakai* litigation, because the Nelsons failed to admit Davidson's invoice as evidence at trial. Pryor cites no authority for his argument that a plaintiff's testimony alone cannot support damages.

Although the Nelsons did not admit accountant Davidson's invoice, Nelson testified that Davidson provided an invoice for $5,000.50 for his services in defending the *Sakai* litigation and that Landmark paid the fee. Viewing this fact in the light most favorable to the Nelsons, Nelson's testimony provides substantial evidence to support finding of fact 104. Moreover, we defer to the trial court's credibility determinations. *Morse*, 149 Wn.2d at 574. Accordingly, finding of fact 104 is supported by substantial evidence.

3. Fee to Newman

Finally, Pryor argues that substantial evidence does not support finding of fact 104, which states that Pryor owes $2,226.00 for Newman's services during the *Sakai* litigation, because Newman was not hired on behalf of Landmark. But, Nelson testified that he hired Newman on behalf of Landmark for services related to the *Sakai* litigation and that Landmark paid Newman $4,452.00. Consequently, substantial evidence supports the trial court's finding of fact 104.

C.     *Conclusion of Law 2 & 3*

Pryor challenges the trial court's conclusion of law 2, which provides that Pryor breached the Redemption Agreement by failing to pay Landmark $105,999.05 for the costs of the *Sakai* litigation. Pryor also challenges conclusion of law 3, which states that Pryor was obligated to

14

pay the costs of the *Sakai* litigation under paragraph 7 of the Purchase Agreement. Pryor argues that the trial court improperly applied paragraph 7 of the Purchase Agreement, that the Purchase Agreement did not include settlement payments, and that the costs awarded to the Nelsons arose from the Nelsons' unclean hands.[5] We conclude that the trial court's findings of fact support conclusions of law 2 and 3.

The trial court found that, prior to judgment in the first *Sakai* lawsuit, Pryor and Landmark executed the Redemption Agreement. The Redemption Agreement provided that Pryor would "reimburse Landmark for one-half of all costs and expenses, including, without limitation, attorneys fees and costs, damages, judgments and amounts paid in settlement, incurred by Landmark or an affiliate in prosecution or defense of the [*Sakai* litigation]." CP at 430.

The trial court also found that Pryor and Nelson later entered into the Purchase Agreement and that Pryor was satisfied with the Purchase Agreement's final terms. The trial court determined that paragraph 7 of the Purchase Agreement states: "The terms of this Agreement notwithstanding, [Pryor] and [Nelson] agree that they will *continue* to share equally in the cost of [the *Sakai*] litigation, including all attorneys' fees and costs, when and as they become due." CP at 446 (emphasis added). The Purchase Agreement also included a provision

---

[5] Pryor also argues that the trial court's conclusions of law 2 and 3 are erroneous because the Nelsons failed to establish the costs of the *Sakai* litigation with expert testimony, as required for breach of contract claims. A fact finder may determine the amount of a damages award by drawing reasonable inferences from reasonably convincing evidence once it is reasonably certain that a breach caused damages. *C 1031 Props., Inc. v. First Am. Title Ins. Co.*, 175 Wn. App. 27, 34, 301 P.3d 500 (2013). There is no requirement that this reasonably convincing evidence be expert evidence. Accordingly, Pryor's argument fails.

that stated that "[t]his Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement. There are no other commitments or agreements between the parties with respect to such matters." CP at 446-47.

The trial court found that Landmark and Sakai entered into a settlement agreement in the *Sakai* litigation, in which Landmark agreed to pay Sakai $70,000.00. Pryor did not pay any portion of the $70,000.00 settlement with Sakai. The trial court found that Pryor owed a total of $105,999.05 for his half of the settlement agreement, attorney fees, and costs from the *Sakai* litigation.

Pryor argues that paragraph 7 of the Purchase Agreement applied only to Bruce Johnston's attorney fees.[6] However, neither paragraph 7 nor the Redemption Agreement limit the *Sakai* litigation costs to only Johnston's attorney fees. Accordingly, Pryor's argument fails.

The trial court's findings of fact establish that Landmark and Pryor agreed to pay one-half of the *Sakai* litigation costs when they entered into the Redemption Agreement. Although the Purchase Agreement was meant to supersede prior agreements, paragraph 7 of the Purchase Agreement explicitly provided that, notwithstanding the Purchase Agreement, Pryor agreed to *continue* to pay one-half of the *Sakai* litigation costs. The trial court determined that, by using the term "continue," Nelson and Pryor intended that the attorney fee provision of the

---

[6] Pryor argues in a footnote, and without analysis, that the trial court erred in excluding a witness's expert testimony under ER 701. Because this argument is made in a footnote and does not include any meaningful analysis, we decline to address it. RAP 10.3(a)(5); *St. Joseph Gen. Hosp. v. Dep't of Revenue*, 158 Wn. App. 450, 472, 242 P.3d 897 (2010) (stating that placing an argument in a footnote is, at best, ambiguous or equivocal as to whether the argument is part of the appeal, and an appellate court may decline to address the argument), *remanded on other grounds*, 171 Wn.2d 1027 (2011).

Redemption Agreement survive the Purchase Agreement. As a result, paragraph 7 of the Purchase Agreement reiterated that Pryor would pay one-half of attorney fees and costs, damages, judgments, and amounts paid in settlement in the *Sakai* litigation. Additionally, the trial court's findings show that Pryor entered into the Purchase Agreement on his own accord and that Pryor was satisfied with its final terms. Accordingly, the trial court's findings of fact support conclusions of law 2 and 3.

IV. BREACH OF NELSON'S FIDUCIARY DUTIES

Pryor also challenges conclusions of law 6, 7, and 10, arguing that the trial court's conclusions are erroneous as a matter of law. We disagree.

A. *Conclusion of Law 6*

Pryor argues that conclusion of law 6, which states that Pryor cannot claim that Nelson breached his fiduciary duties in orchestrating the Debt Swap because Pryor knowingly acquiesced to the Debt Swap, is not supported by substantial evidence. We hold that the findings of fact support conclusion of law 6.

Although Pryor contended that Nelson misrepresented material facts regarding the Debt Swap, the trial court found that there was insufficient corroboration to support Pryor's contention. The trial court also found that the terms of the Debt Swap were unambiguous and that Pryor appeared to understand the terms of the agreement. The trial court determined that Pryor signed the Debt Swap on his own accord.

Because Pryor argues that the trial court's findings do not support its conclusions of law, our review is limited to determining whether the trial court's findings support the conclusions of law. *Am. Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 222, 797 P.2d 477

17

(1990). The trial court's findings establish that Pryor signed the Debt Swap on his own accord and that he was aware of its terms. Pryor does not show that he was fraudulently induced to sign the Debt Swap. As a result, the trial court's findings of fact support conclusion of law 6.

B.      *Conclusion of Law 7 & 10*

Pryor also argues that the trial court erred as a matter of law in entering conclusions of law 7 and 10, in which the trial court determined that Pryor's breach of fiduciary duties claim was barred by the business judgment rule because Nelson relied in good faith upon the information and opinions of his employees in agreeing to the Debt Swap.[7] We disagree.

Limited liability corporation (LLC) managers owe the LLC and its members fiduciary duties. *Bishop of Victoria Corp. Sole v. Corporate Bus. Park, LLC*, 138 Wn. App. 443, 456, 158 P.3d 1183 (2007). One of these duties is the duty of loyalty, which requires a fiduciary to avoid "secret profits, self-dealing, and conflicts of interest." *Horne v. Aune*, 130 Wn. App. 183, 200, 121 P.3d 1227 (2005). A party alleging that an LLC manager breached his fiduciary duties bears

---

[7] Pryor appears to challenge conclusion of law 5, arguing that the trial court erred in concluding that Pryor had not proven his breach of contract claim. However, conclusion 5 provides only that Nelson owed Pryor fiduciary duties. Because Pryor fails to assign error to conclusion of law 5, as required by RAP 10.3(g), and because the nature of his challenge to the trial court's conclusion is unclear, we decline to review this issue. *Harris*, 133 Wn. App. at 137 ("[W]e will waive technical violations of RAP 10.3(g), especially where, as here, the appellant's brief makes the nature of the challenge clear and includes the challenged findings in the text.").

Additionally, Pryor challenges conclusion of law 8, in which the trial court restates the law regarding the business judgment rule. Under RAP 10.3(a)(6), an appellant's brief must include arguments supporting the issues presented for review and citations to legal authority. An appellant waives an assignment of error that is unsupported by argument or authority. *Bercier v. Kiga*, 127 Wn. App. 809, 824, 103 P.3d 232 (2004). Pryor does not provide argument suggesting that the trial court's restatement of the law is erroneous and does not provide contrary authority. Because Pryor failed to support his assignment of error to conclusion of law 8 with argument and authority, he has waived his challenges to the trial court's conclusion.

the burden of proof. *Senn v. Nw. Underwriters, Inc.*, 74 Wn. App. 408, 414, 875 P.2d 637 (1994).

The business judgment rule prevents courts from substituting their judgment for that of corporate management where there is no evidence of fraud, dishonesty, or incompetence. *See In re Spokane Concrete Prods., Inc.*, 126 Wn.2d 269, 279, 892 P.2d 98 (1995). Under the business judgment rule, "corporate management is immunized from liability in a corporate transaction where (1) the decision to undertake the transaction is within the power of the corporation and the authority of management, and (2) there is a reasonable basis to indicate that the transaction was made in good faith." *Scott v. Trans-Sys., Inc.*, 148 Wn.2d 701, 709, 64 P.3d 1 (2003). An LLC manager does not breach his fiduciary duty when he relies in good faith upon the records of the LLC or upon opinions, reports, or statements by employees of the LLC. RCW 25.15.038(3)(b).

The trial court found that Pryor's agreements with Landmark and Sportsman Park gave Nelson broad authority to manage the businesses. The trial court also found that Nelson was permitted to hire a number of professionals to perform services on behalf of his and Pryor's companies. At trial, Helen Stevenson, Landmark's bookkeeper, testified that she recorded the Debt Swap and did not believe that the transaction was improper. Stevenson provided financial information about the companies to an accountant, and the accountant created valuations of the companies to begin discussions about purchasing Pryor's ownership interest. Nelson also hired an attorney on behalf of Landmark to advise him and Pryor on how to structure the Debt Swap. Nelson and Pryor followed the attorney's advice when executing the Debt Swap.

Pryor argues that the trial court erroneously concluded that his claim for breach of fiduciary duties was barred by the business judgment rule because Nelson acted fraudulently in

facilitating the Debt Swap. However, Pryor does not show that the Debt Swap was fraudulent, which is required to bar the application of the business judgment rule. Moreover, Pryor points to no evidence that Nelson did not rely in good faith on his employees' opinions and statements when agreeing to the Debt Swap.

Entering into the Debt Swap was within Nelson's broad powers as the managing member of the participating companies. Nelson retained Landmark's bookkeeper and a number of professionals to ensure that the Debt Swap was properly structured. There is a reasonable basis to show that the Debt Swap was made upon Nelson's good faith reliance on his employees' opinions and statements, and Landmark's bookkeeper and the professionals did not believe that the Debt Swap was improper. Accordingly, Nelson is immunized from liability for the Debt Swap under the business judgment rule. Therefore, the trial court did not err in entering conclusions of law 7 and 10.

## V. FRAUD[8]

Pryor challenges a number of the trial court's findings of fact, arguing that they are not supported by substantial evidence and that the findings reflect the trial court's misunderstanding regarding Pryor's knowledge of the Debt Swap. Pryor also challenges conclusion of law 12, arguing that the trial court's conclusion that he failed to show that the Nelsons acted fraudulently was not supported by the trial court's findings of fact. We disagree.

---

[8] Pryor argues that the Nelsons defrauded him through false capital contributions. However, Pryor fails to challenge any findings of fact or conclusions of law in making this argument. Because Pryor fails to assign error to any findings of fact or conclusions of law, as required by RAP 10.3(g), and because the nature of his argument is unclear, we decline to review this issue. *Harris*, 133 Wn. App. at 137.

A.      *Finding of Fact 16*

Pryor challenges finding of fact 16, which states that prior to the mediation in the *Sakai*

litigation, "neither Nelson nor Pryor had any intent on satisfying the Sakai judgment(s)."  CP at

428.  Pryor argues that finding of fact 16 is not supported by substantial evidence.  We disagree.

Evidence supporting this finding of fact included an e-mail exchange between Nelson and

Pryor, dated May 9, 2012.  Pryor sent an e-mail stating:

> How about I propose a liability limit of 150,000 on the legal suits?  We may be arguing over nothing here as neither of us has any intention of paying the Sakai's [sic] anything. . . . I hope I am not over focused, to my own detriment, on an irrelevant matter.

Ex. 346.

Viewed in a light most favorable to the Nelsons, this evidence is sufficient to persuade a

fair-minded person that neither Pryor nor Nelson intended to pay the judgment ordered in the

*Sakai* litigation.  As a result, substantial evidence supports finding of fact 16.

B.      *Finding of Fact 27A*[9]

Pryor also challenges finding of fact 27A, which provides in part: "By the end of 2007,

Sportsman Park owed Landmark approximately $746,330.66."  CP at 430.  Pryor argues that

finding of fact 27A is not supported by substantial evidence because Nelson admitted that the

$746,330.66 figure was false.  We disagree.

In January 2008, Nelson and Pryor met to discuss the Debt Swap.  Nelson stated that

"Sportsman Park owed [Landmark] a couple hundred thousand for work completed and still

---

[9] The finding of fact between finding 27 and finding 28 is unnumbered.  Pryor refers to this unnumbered finding as finding of fact 27A.  We do the same.

unpaid as well as a few hundred thousand from [another development company] for unreimbursed construction costs." Ex. 43. A few months later, Nelson notified Pryor that Sportsman Park owed Landmark $746,330.66.

Pryor argues that Nelson's statement in January 2008 regarding the amount that Sportsman Park owed Landmark shows that Nelson misrepresented the amount of debt owed to Landmark in his subsequent notice to Pryor. Evidence admitted at trial establishes that Sportsman Park owed Landmark $746,330.66. Nelson's statement that Sportsman Park owed Landmark "a couple hundred thousand . . . as well as a few hundred thousand" does not show that the trial court's finding is not supported by the record. Ex. 43. Moreover, we defer to the trial court's evaluation of the persuasiveness of evidence. *Endicott*, 142 Wn. App. at 909. Accordingly, finding of fact 27A is supported by substantial evidence.

C.    *Finding of Fact 33*

Pryor also challenges finding of fact 33, which states in part:

Pryor asserts that Nelson falsely represented that he was going to put $373,165.22 of his own money (a cash infusion from another entity called "Seattle Holdings") as a matching contribution to the contribution the Pryors were making as part of the Debt Swap. . . . The record is void of any documentation with regards to this assertion . . . there is insufficient corroboration to prove [Nelson's alleged promise].

CP at 431-32. Pryor argues that finding of fact 33 is not supported by substantial evidence because the record contains evidence regarding Nelson's assertion. We disagree.

Pryor cites to two exhibits to support his argument. First, Pryor cites to exhibit 158. However, exhibit 158 was not admitted a trial. Pryor also cites to an e-mail exchange between him and Nelson. In an e-mail to Pryor, Nelson stated: "We talked about an offset against interest I would have/could have earned for money I had advanced Sportsman [Park] ($750,000).

Almost always we have paid you interest on money you have lent the company. I don't think I have ever earned interest or taken it before, and this was a way of handling it." Ex. 161.

The meaning of the e-mail exchange Pryor references is unclear, but the e-mails do not reference money borrowed from Seattle Holdings or a cash infusion in the amount of $373,165.22. Our review of the record reveals other e-mails between Nelson and Pryor with the subject heading "RE: Borrowed from Seattle Holdings/Contributions." Ex. 126. However, these e-mails reference a $42,000.00 loan Sportsman Park borrowed from Seattle Holdings. We are unable to locate evidence that supports Pryor's contention that Nelson stated he would contribute his own funds to Landmark. As a result, Pryor fails to meet his burden in showing that the record does not support the trial court's finding that there is insufficient corroboration to prove that Nelson represented that he would personally pay Landmark. That is to say, Pryor fails to present evidence to support his contention that Nelson stated that he would personally pay Landmark. Accordingly, finding of fact 33 is supported by substantial evidence.

D.    *Finding of Fact 44*

Pryor also challenges finding of fact 44, which provides that Frank Miller[10] concluded that the Debt Swap was beneficial to Pryor. Pryor argues that finding of fact 44 is not supported by substantial evidence because Miller testified that the Debt Swap was a "particularly bad deal" for Pryor. Br. of Appellant at 44. We disagree.

At trial, Miller testified about the Debt Swap. Miller stated that the Debt Swap was a "particularly bad deal" for Pryor in comparison to Nelson because of Pryor's potential liability

---

[10] Frank Miller is a fraud examiner that was hired by the Sakais in the second *Sakai* lawsuit.

for tax evasion. 8 Verbatim Report of Proceedings (VRP) at 1454. Miller also testified that, despite the tax implications, Pryor benefitted from the Debt Swap because the transaction protected Pryor from the judgment in the first *Sakai* lawsuit.

Miller's testimony establishes that although Pryor would suffer tax consequences for the Debt Swap, Pryor nevertheless benefitted from the transaction because it protected him from judgment in the *Sakai* litigation. Viewed in a light most favorable to the Nelsons, Miller's testimony is sufficient to persuade a fair-minded person that Pryor benefitted from the Debt Swap. As a result, substantial evidence supports finding of fact 44.

E.      *Finding of Fact 92*

Pryor also challenges finding of fact 92, which states that Nelson sent an e-mail to Pryor about whether they would be unified in their defense against the Sakais. Pryor argues that finding of fact 92 is not supported by substantial evidence. We disagree.

One exhibit admitted at trial was an e-mail Nelson sent to Pryor that stated:

> We are going to have joint defense or not. Our planning for the suit has to be now. We are making decisions that help me or both of us. There will not be a chance later. You want to claim amnesia for your 1/2 of a simple non-fraudulent transaction. Helen spoke to you about it in advance as well as I did. There were tax consequences acknowledged by both on our returns. We memorialized the decision to trade debt in advance as signed by both of us.

Ex. 346.

Finding of fact 92 is an exact quote of the e-mail Nelson submitted at trial. Accordingly, finding of fact 92 is supported by substantial evidence.

24

F.      *Finding of Fact 93*

Pryor also challenges finding of fact 93, which provides that Pryor responded to Nelson's

e-mail regarding a joint defense for the *Sakai* litigation and stated that he was not claiming

amnesia and that he wanted to turn over his partnership interest in Sportsman Park to Nelson.

Pryor argues that finding of fact 93 is not supported by substantial evidence.  We disagree.

In response to Nelson's e-mail query about whether Nelson and Pryor would have a joint

defense in the litigation, Pryor replied:

> I understand your frustration . . . my desire is really to move on . . . it is obvious I
> am best served to turn this over to you if I can . . . rather than you being limited by
> a partner who can barely keep his half going and is struggling to do so.

Ex. 346.  In a later e-mail, Pryor also stated that Landmark's bookkeeper, Stevenson, was

satisfied with the Debt Swap and that she would testify for both Nelson and Pryor in the *Sakai*

litigation.

The e-mails admitted at trial establish that Pryor wished to turn over his interest in

Sportsman Park to Nelson so that Nelson would no longer be limited by Pryor.  The e-mails also

show that Pryor had talked with Stevenson and communicated to Nelson that Stevenson would

testify in the *Sakai* litigation.  As a result, substantial evidence supports finding of fact 93.

G.      *Finding of Fact 106*

Pryor also challenges finding of fact 106, which provides:

> Throughout their relationship, Nelson and Pryor went through various
> stages of trust and distrust.  In some emails, it is clear that they were on the same
> page and unified with regards to intended results.  This is particularly true with the
> Sakai litigation and the steadfast desire of both Nelson and Pryor to not pay any
> judgments obtained by Sakai.

CP at 449. Pryor argues that finding of fact 106 is not supported by substantial evidence. We disagree.

A number of e-mails exchanged between Nelson and Pryor were admitted at trial. The e-mails establish that Nelson and Pryor intended to pursue a joint defense in the *Sakai* litigation and that neither Nelson nor Pryor had "any intention of paying the Sakai's [sic] anything." Ex. 346. One e-mail from Pryor to Nelson also stated: "I don't think your anger at me is well placed. I am simply trying to do something that is fair." Ex. 346. Another e-mail Nelson sent to Pryor stated, "You want to claim amnesia for your 1/2 of a simple non-fraudulent transaction." Ex. 346.

The e-mails sent between Nelson and Pryor show that the trust exhibited in their relationship ebbed and flowed. Accordingly, the e-mails support the trial court's conclusion that Nelson and Pryor's relationship "went through various stages of trust and distrust." CP at 449. Therefore, substantial evidence supports finding of fact 106.

H.    *Conclusion of Law 12*

Pryor also challenges conclusion of law 12, which states that "[w]hether Nelson represented to Pryor that he promised to pay cash to Landmark in the Debt Swap remains ambiguous and unclear." CP at 453. Pryor argues that the trial court's findings of fact do not support conclusion of law 12. We disagree.

As discussed above, the trial court's finding of fact 33, which states that there is insufficient corroboration in the record to support Pryor's assertion that Nelson represented that he would contribute his own funds to Landmark, is supported by substantial evidence. In addition, neither the Debt Swap nor related documents demonstrate that Nelson agreed to

contribute his own funds to Landmark to remedy Sportsman Park's debt. Because finding of fact 33 is supported by substantial evidence, and finding of fact 33 supports conclusion of law 12, the trial court did not err in concluding that it was unclear whether Nelson promised to contribute funds to Landmark in the Debt Swap.

## VI. GREEN ROCK HOLDINGS'S BREACH OF CONTRACT

Pryor also challenges the trial court's conclusions of law 14, 18, and 19.[11] Conclusion of law 14 states that Pryor fully and completely released Nelson, Sportsman Park, and Central Plaza in the Purchase Agreement. Conclusion of law 18 provides that Pryor failed to read the Debt Swap and Purchase Agreement and that Pryor signed both the Debt Swap and Purchase Agreement on his own volition. Conclusion of law 19 states, "Pryor has failed to establish that Green Rock [Holdings] breached" its contract because Pryor forgave the balance owed to him by Green Rock Holdings when he agreed to the Debt Swap. CP at 454. Pryor argues that the trial court's findings do not support its conclusions of law. We disagree.

The trial court found that, under the Redemption Agreement signed in 2006, Landmark and Pryor agreed that Green Rock Holdings would pay Pryor for his ownership interest in Landmark. In 2008, Nelson and Pryor agreed to restructure their debts and executed the Debt Swap. In the Debt Swap, Pryor agreed to forgive the balance Green Rock Holdings owed him in exchange for Landmark forgiving the balance Sportsman Park owed it. The trial court

---

[11] Pryor also appears to challenge conclusions of law 15, 16, and 17. Conclusions of law 15, 16, and 17 restate the rules of law regarding release provisions and breach of contract claims. Pryor does not provide argument suggesting that the trial court's restatement of the law is erroneous and does not provide contrary authority. Because Pryor failed to support his assignment of error to conclusions of law 15, 16, and 17 with argument and authority, he has waived his challenges to the trial court's conclusions. RAP 10.3(a)(6); *Bercier*, 127 Wn. App. at 824.

determined that there was insufficient evidence that Nelson misrepresented material facts about the Debt Swap to induce Pryor to agree to it.

In 2012, Nelson and Pryor entered into the Purchase Agreement. The Purchase Agreement contained a release provision whereby Pryor agreed to fully and completely release any and all claims against Nelson, Sportsman Park, and Central Plaza. The trial court found that Pryor did not read the majority of the documents he was asked to sign. The trial court also concluded that there was no evidence that Pryor was fraudulently induced to enter into the Purchase Agreement.

The trial court determined that the Purchase Agreement contained a release provision that fully released Nelson, Sportsman Park, and Central Plaza from all claims. In addition, the trial court's findings show that Pryor did not read the majority of contracts he was asked to sign. The findings also establish that Pryor signed both the Debt Swap and the Purchase Agreement on his own volition and that there was no evidence that Nelson fraudulently misrepresented the terms of either the Debt Swap or the Purchase Agreement to Pryor. These findings support the trial court's conclusions that Pryor fully and completely released claims when he signed the Purchase Agreement and that Pryor signed both the Debt Swap and the Purchase Agreement on his own volition. Accordingly, the trial court's findings of fact support the trial court's conclusions of law 14 and 18.

Moreover, the trial court's findings of fact demonstrate that Pryor failed to show that Green Rock Holdings violated the Debt Swap by failing to pay Pryor for his ownership interest in Landmark. The trial court's unchallenged findings of fact establish that Green Rock Holdings originally agreed to pay Pryor for his 50 percent ownership interest in Landmark. However, the

trial court's unchallenged findings also show that Pryor agreed to forgive the debt owed to him by Green Rock Holdings when he and Nelson executed the Debt Swap. Accordingly, the trial court's findings support conclusion of law 19.

## VII. INDEMNITY

Pryor also challenges the trial court's conclusion of law 20, which provides that Pryor failed to prove his contractual indemnity claim. Pryor argues that the trial court erred in reaching this conclusion without also determining whether Pryor proved his claim for equitable indemnification. The Nelsons argue that this court should reject Pryor's argument because it is not preserved on appeal under RAP 2.5(a). We agree with the Nelsons and decline to review this issue.

RAP 2.5(a) provides that we will generally not review an issue or argument that was not presented to the trial court. The purpose of RAP 2.5(a) is to give the trial court the opportunity to address any errors. *See Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 671 n.2, 230 P.3d 583 (2010).

In his answer, Pryor counterclaimed for indemnification. Pryor stated that he was "entitled to indemnification and contribution in an amount to be proven at trial." CP at 73. Pryor's counterclaim did not identify whether he sought to pursue an equitable indemnity or a contractual indemnity claim. In his trial brief, Pryor argued only that he had "contractual rights to indemnification" under the Redemption Agreement and the Purchase Agreement. CP at 311. At trial, Pryor argued that he had asserted a claim for "contractual equitable indemnity," but he did not argue that he was entitled to equitable indemnification during his closing argument. 1 VRP at 31.

29

Pryor argues that this issue is preserved on appeal because his proposed findings of fact

and conclusions of law present a theory for recovery under equitable indemnification. Pryor's

proposed findings and conclusions provided: "In addition, the Court finds that the Pryors have

met the requirements for equitable indemnity." Suppl. CP at 27 (Ex. 2). Although Pryor

included a proposed conclusion that he proved his equitable indemnity claim, our review of the

record shows that Pryor pleaded only a contractual indemnity claim. Pryor did not present an

argument regarding equitable indemnification to the trial court, and Pryor did not inform the

court of the elements regarding an equitable indemnification claim. If Pryor had properly argued

his equitable indemnification claim below, the trial court would have been afforded the

opportunity to correct any errors. *See Salas*, 168 Wn.2d at 671 n.2. Accordingly, we decline to

review this issue because Pryor failed to preserve it on appeal.

## VIII. ATTORNEY FEES AT TRIAL

Pryor challenges finding of fact 3 and conclusion of law 3 in the trial court's findings and

conclusions regarding attorney fees.[12] Pryor argues that finding of fact 3 is not supported by

substantial evidence and that conclusion of law 3 is erroneous as a matter of law. We determine

that finding of fact 3 is supported by substantial evidence and that the trial court did not err in

entering conclusion of law 3.

---

[12] Pryor also challenges conclusion of law 2, in which the trial court states that an award of
attorney fees for breach of fiduciary duty is discretionary. Pryor does not provide argument
suggesting that the trial court's restatement of the law is erroneous and does not provide contrary
authority. Because Pryor failed to support his assignment of error to conclusion of law 2 with
argument and authority, he has waived his challenges to the trial court's conclusion. RAP
10.3(a)(6); *Bercier*, 127 Wn. App. at 824.

A.      *Finding of Fact 3*

Pryor challenges finding of fact 3, which provides that "Landmark is the prevailing party under the 2006 Redemption Agreement claim and is entitled to an award of it[s] reasonable attorney's fees and costs." CP at 674. Pryor argues that finding of fact 3 is not supported by substantial evidence. We disagree.

The Redemption Agreement contains a provision stating: "If any party needs to engage an attorney to enforce the terms of this Agreement . . . the prevailing party shall, in addition to any other relief, be entitled to recover from the party in default reasonable attorneys' fees and costs." CP at 26. The Redemption Agreement also states that "[a]ll covenants, provisions, agreements, representations and warranties provided in this Agreement will survive the execution of this Agreement." CP at 26. Following a bench trial, the trial court concluded that the Nelsons prevailed on their claim that Pryor violated the Redemption Agreement by failing to pay one-half of all costs associated with the *Sakai* litigation.

Viewing the evidence in a light most favorable to the Nelsons, substantial evidence supports the trial court's finding that Landmark was the prevailing party on its breach of contract claim for the Redemption Agreement and that the Redemption Agreement entitled the prevailing party to an award of reasonable attorney fees and costs.

B.      *Conclusion of Law 3*

Pryor also challenges conclusion of law 3, in which the trial court concluded that "the parties' primary claims are so related that no reasonable segregation can be made. In light of the interrelated nature of the lawsuit as a whole, the law does not require the court or the parties to

31

attempt to segregate counsel's time between each claim." CP at 676. Pryor argues that conclusion of law 3 is erroneous as a matter of law. We disagree.

We will uphold an attorney fee award unless we determine that the trial court manifestly abused its discretion. *Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). A trial court abuses its discretion when its decision is based on untenable grounds or is made for untenable reasons. 159 Wn.2d at 538.

"If attorney fees are recoverable for only some of a party's claims, the award must properly reflect a segregation of the time spent on issues for which fees are authorized from time spent on other issues," even where the claims are interrelated. *Mayer v. City of Seattle*, 102 Wn. App. 66, 79-80, 10 P.3d 408 (2000). But where the trial court finds that the claims are so related that no reasonable segregation of successful and unsuccessful claims can be made, the trial court is not required to segregate time. *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 673, 880 P.2d 988 (1994). A "court is not required to artificially segregate time . . . where the claims all relate to the same fact pattern, but allege different bases for recovery." *Ethridge v. Hwang*, 105 Wn. App. 447, 461, 20 P.3d 958 (2001).

At trial, Pryor argued that each of his pleaded causes of action were based on the allegedly fraudulent Debt Swap. The Nelsons prevailed on their claims for breach of contract under both the Redemption Agreement and the Purchase Agreement and were awarded attorney fees. The trial court also awarded the Nelsons attorney fees for their successful defense of Pryor's claims for breach of fiduciary duties, fraud, breach of contract, and indemnification.

Although both Pryor's and the Nelsons' claims alleged different bases of recovery, each claim was based on a common core of facts—the Debt Swap and avoiding payment of the *Sakai*

litigation judgment. As a result, the trial court was not required to segregate time because these claims were so related that no reasonable segregation of time spent on these issues could be made. Accordingly, the trial court's conclusion that "the law does not require the court or the parties to attempt to segregate counsel's time between each claim," was based on tenable grounds and reasons. CP at 676. Thus, the trial court did not abuse its discretion in concluding that segregation of attorney fees was not required.

## IX. ERRORS IN JUDGMENT & ORDER

Pryor also argues that the trial court erred in entering its judgment and order because (1) the trial court used an incorrect liquidation date when calculating prejudgment interest, (2) the postjudgment interest rate in the judgment and order is erroneous, and (3) the merger rule extinguishes any future award of attorney fees. We disagree.

A. *Prejudgment Interest*

Pryor argues that the trial court erred in entering its judgment and order because it used an incorrect liquidation date when calculating its prejudgment interest award. We disagree.

We review an award of prejudgment interest for an abuse of discretion. *Hadley v. Maxwell*, 120 Wn. App. 137, 141, 84 P.3d 286 (2004). A trial court abuses its discretion when its decision is based on untenable grounds or is made for untenable reasons. 120 Wn. App. at 141.

"Prejudgment interest is awarded to compensate a party who has lost the use of money to which he or she was entitled." *Lakes v. von der Mehden*, 117 Wn. App. 212, 217, 70 P.3d 154 (2003). Generally, the prevailing party in a lawsuit is entitled to prejudgment interest on

liquidated damages. *Hadley*, 120 Wn. App. at 141. Damages are liquidated when evidence makes it possible to determine the amount with exactness. 120 Wn. App. at 142.

In its findings and conclusions, the trial court concluded that Pryor owed the Nelsons $105,999.05 for Pryor's breach of both the Redemption Agreement and the Purchase Agreement. Sixty-three thousand dollars of that award was for Pryor's failure to pay legal fees and costs during the *Sakai* litigation. The $63,000.00 was ascertainable at the time the Nelsons filed their complaint in January 2014. Thirty-five thousand dollars was owed to the Nelsons for the settlement payment in the *Sakai* litigation, which was paid in February 2014. The remaining $6,999.05 was due to the Nelsons for other costs incurred in defending the *Sakai* litigation. This figure was determined when the trial court entered its findings and conclusions. The trial court determined that the Nelsons were entitled to prejudgment interest through the date of its judgment, November 1, 2016.

Pryor fails to show that the damages the trial court ordered were liquidated on the date that the trial court entered its findings and conclusions. The evidence makes clear that the Nelsons lost money that they were entitled to because of Pryor's failure to pay legal fees and costs in the *Sakai* litigation, the *Sakai* settlement agreement, and other costs incurred in defending the *Sakai* litigation. These damages were possible to determine with exactness at varying dates. Accordingly, Pryor fails to show that the trial court abused its discretion in awarding the Nelsons prejudgment interest based on the varying liquidation dates of the damages owed to the Nelsons.

B.      *Postjudgment Interest Rate*

Pryor argues that the trial court erred in entering its judgment and order because it used an incorrect postjudgment interest rate. We disagree.

Awards of postjudgment interest are mandatory under RCW 4.56.110. *TJ Landco, LLC v. Harley C. Douglass, Inc.*, 186 Wn. App. 249, 256, 346 P.3d 777 (2015). Accordingly, we review an award of postjudgment interest de novo. 186 Wn. App. at 256.

RCW 4.56.110 sets the rate for four categories of judgments: (1) breach of contract where an interest rate is specific, (2) child support, (3) tort claims, and (4) all other claims. RCW 4.56.110. A judgment based on more than one type of claim is subject to only one interest rate. *Woo v. Fireman's Fund Ins. Co.*, 150 Wn. App. 158, 164, 208 P.3d 557 (2009). In determining the appropriate interest rate, we must examine the component parts of the judgment and determine what the judgment is primarily based on. *See* 150 Wn. App. at 173.

In its judgment and order, the trial court applied category four, calling for an interest rate of 12 percent. Pryor argues that the trial court should have applied category one because the Purchase Agreement provided an interest rate of eight percent on the promissory note for Pryor's 50 percent ownership interest.

The trial court determined that Pryor breached the Redemption Agreement and Purchase Agreement. Neither the Redemption Agreement nor the Purchase Agreement provide for a specific interest rate. Accordingly, the judgment was not primarily based on breach of contract claims where the contract provided for a specific interest rate. Accordingly, the trial court did not err in applying category four, the "catch-all," 12 percent judgment interest rate.

C.    *Merger Rule*

Pryor argues that the trial court erred in providing that attorney fees and costs would be awarded in further actions enforcing its judgment because the merger rule extinguishes any future attorney fees award.  This issue is not ripe for review.

We decline to review issues that are not ripe for review.  *See Clark County v. Rosemere Neigh. Ass'n*, 170 Wn. App. 859, 888-89, 290 P.3d 142 (2012).  An issue is ripe when:

> "(1) an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that are direct and substantial rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

170 Wn. App. at 888 (quoting *Bellewood No. 1, LLC v. LOMA*, 124 Wn. App. 45, 49-50, 97 P.3d 747 (2004)).

The merger rule is an aspect of claim preclusion that applies to a judgment in favor of the plaintiff.  *Cain & Weiner v. Barker*, 42 Wn. App. 835, 837, 713 P.2d 1133 (1986).  Under the merger rule, when a plaintiff obtains a valid and final judgment to recover money damages, the cause of action merges with the judgment and the plaintiff may not commence a second action on any part of the original claim.  42 Wn. App. at 837.

In its judgment, the trial court ordered that "upon application of the Court, additional attorney's fees and costs shall be awarded . . . for further actions incurred in enforcing this judgment."  CP at 681.

The present case does not involve vexatious relitigation or a new cause of action on the trial court's judgment.  Whether Nelson will commence a second action on the present judgment

36

is hypothetical and speculative. As a result, there is no actual or existing dispute regarding whether Nelson may recover attorney fees and costs in a future action. Accordingly, Pryor's claim is not ripe for review.

## X. CROSS APPEAL: PRYOR'S BREACH OF THE PROMISSORY NOTE

On cross appeal, the Nelsons assign error to the trial court's finding of fact 3 and conclusion of law 1. The Nelsons argue that finding of fact 3 is not supported by substantial evidence and that conclusion of law 1 is not supported by the trial court's findings. We disagree.

A.      *Finding of Fact 3*

The Nelsons assign error to finding of fact 3, which states that the promissory note for Pryor's ownership interest in Landmark had specifically agreed upon terms in regard to demand for payment. The Nelsons argues that finding of fact 3 is not supported by substantial evidence. We disagree.

Pryor purchased a 50 percent ownership interest in Landmark, executing a promissory note with Landmark. The promissory note provides: "When needed the company shall give a minimum of seven days notice to [Pryor] in which event [Pryor] shall have to deposit said amount in to the company account." CP at 16. The promissory note establishes that Landmark was required to give Pryor a minimum of seven days' notice in the event that Landmark demanded payment on the promissory note. Accordingly, the promissory note supports the trial court's finding that Landmark and Pryor agreed upon specific terms regarding the demand for payment on the promissory note. Therefore, substantial evidence supports finding of fact 3.

B.       *Conclusion of Law 1*

The Nelsons also assign error to conclusion of law 1, which provides that Landmark failed to properly demand payment on the promissory note.  The Nelsons argue that the trial court's findings do not support conclusion of law 1.  We disagree.

The trial court found that Nelson's testimony indicated that the demand procedures provided in the promissory note were never followed.  Although Nelson testified that Landmark verbally demanded payment from Pryor in 2008, the trial court found that "[Landmark] failed to tender the Note properly in accordance with the agreed upon terms."  CP at 427.  Accordingly, the trial court's unchallenged findings of fact establish that Landmark failed to comply with the demand procedures agreed upon in the promissory note.  Moreover, we defer to the trial court's determination of the persuasiveness of evidence.  Thus, the trial court's findings support conclusion of law 1.

ATTORNEY FEES ON APPEAL

Both the Nelsons and Pryor argue that they are entitled to attorney fees on appeal.  We determine that Landmark is entitled to an award of reasonable attorney fees.

A prevailing party may recover attorney fees on appeal when the fees are authorized by statute, equity, or the parties' agreement.  *Thompson v. Lennox*, 151 Wn. App. 479, 484, 212 P.3d 597 (2009); *see* RAP 18.1(a).  RCW 4.84.330 provides that the prevailing party in a contract action is entitled to attorney fees if the contract authorizes such an award.

Pryor and Landmark executed the Redemption Agreement.  The Redemption Agreement provides: "If any party needs to engage an attorney to enforce the terms of this Agreement . . .

No. 49640-2-II

the prevailing party shall, in addition to any other relief, be entitled to recover from the party in default reasonable attorneys' fees and costs, including any on appeal." CP at 26.

The Redemption Agreement authorizes an award of attorney fees to the prevailing party on appeal. Because Pryor is not the prevailing party on appeal, he is not entitled to attorney fees under RAP 18.1(a). However, Landmark is a substantially prevailing party on appeal. As a result, Landmark is entitled to recover reasonable attorney fees and costs, subject to compliance with RAP 18.1(d).

## CONCLUSION

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Lee, A.C.J.

Sutton, J.

39